UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


LUIS PAGAN


    v.                           CASE NO. 3:11CV1134(DJS)


ANGEL QUIROS, ET AL.


**RULING ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Luis Pagan, is currently incarcerated at the MacDougall-Walker Correctional Institution, in Suffield, Connecticut ("MacDougall-Walker").  He commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against Warden Angel Quiros, Lieutenants Nelson Correa, Brian Siwicki and Michael Pafumi, Counselor John Frasco, Captain Daryl Little, Deputy Warden Faucher, Dr. Carson Wright and Correctional Officers Aaron Bowman, Shaun Duggan, Matthew Prior, Anthony Trombly, Sean Guimond, Vierra, Vereen and Kidd.

On October 4, 2011, the Court dismissed all claims under the Fourth, Fifth and Eighth Amendments to the United States Constitution, all claims under 18 U.S.C. §§ 241, 242 and all other claims for monetary damages against the defendants in their official capacities.  The Court concluded that the claims for deliberate indifference to medical needs, excessive force, failure to protect, retaliation and unconstitutional conditions of confinement would proceed, as well as the state law claims of

assault, battery and negligence.

On January 31, 2012, the defendants filed a motion to dismiss on the grounds that the plaintiff had failed to allege the personal involvement of Warden Quiros, Deputy Warden Faucher and Captain Little in any of the alleged violations of his rights, that the allegations against Correctional Officers Vierra and Vereen failed to state a claim upon which relief may be granted, and that all of the defendants were entitled to statutory immunity as to any negligence claims.  On May 23, 2012, the Court granted the motion as to the retaliation and negligence claims, and all claims against defendants Quiros, Faucher and Little. The Court denied the motion to dismiss as to the claims against defendants Vierra and Vereen for deliberate indifference to the plaintiff's health and safety.

On July 30, 2012, the plaintiff filed a motion to amend and clarify his Complaint.  On August 1, 2012, the Court granted the motion to the extent it sought to  dismiss all claims against Dr. Carson Wright and to clarify that after March 19, 2010, the plaintiff was no longer a pretrial detainee.  Thus, all claims against Dr. Wright have been dismissed and he has been terminated as a defendant in this case.

The defendants have filed a motion for partial summary judgment as to all claims against Lieutenant Siwicki and Correctional Officers Vierra, Vereen and Kidd.  For the reasons

that follow, the motion is granted.

## I.   **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(a), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[U]nsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence based on which

the jury could reasonably find for him.  *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II.  <u>Facts</u>[1]

In January 2010, the plaintiff was a pretrial detainee and was confined at Northern Correctional Institution in Somers, Connecticut ("Northern"). On January 6, 2010, Correctional Officers Sean Guimond and Richard Jones reported to the plaintiff's cell in Two East Housing Unit to escort the plaintiff and his cellmate to recreation.  Officers Jones and Guimond

---

[1] The undisputed facts are taken from defendants' Local Rule 56(a)1 Statement along with Attachments to the Statement [Doc. No. 117-2], the plaintiff's Local Rule 56(a)2 Statement [Docs. Nos. 125-4 through 125-5] and attached Exhibits.

placed handcuffs on both the plaintiff and his cellmate through a slot in the cell door.  As the cell door opened, the plaintiff's cellmate exited the cell and proceeded to strike Officer Jones in the face with his hands and the handcuffs.  Officer Guimond approached Officer Jones in an attempt to assist him.  The plaintiff came out of the cell and ran towards Officer Jones. The plaintiff then raised up his hands in the direction of Officer Guimond, they struggled and the plaintiff attempted to take a swing at Officer Guimond.  Correctional staff called for assistance and other staff responded to the scene to assist in gaining control over the plaintiff and his cellmate.

On January 12, 2010, Correctional Officers Kidd and Duggan delivered dinner to the plaintiff in his cell.  The plaintiff alleges that Officer Kidd spit into his juice prior to delivering it to him.

On January 27, 2010, Connecticut State Police troopers arrested the plaintiff on an assault charge in connection with the altercation that occurred on January 6, 2010.  The plaintiff subsequently pleaded guilty to the charge.

On March 19, 2010, in the Connecticut Superior Court for the Judicial District of Windham at Danielson, the plaintiff pleaded guilty to Robbery in the First Degree in violation of Connecticut General Statutes § 53a-134, Criminal Use of Weapon in violation of Connecticut General Statutes § 53a-216, and Tampering with a

Witness in violation of Connecticut General Statutes § 53a-151.
At that time a judge imposed a total effective sentence of ten
years of imprisonment. *See State v. Pagan*, Docket Nos. WWM-CR08-
0135619-T, WWM-CR09-0138407-T (Conn. Super. Ct. Mar. 19, 2010).
Thus, as of March 19, 2010, the plaintiff was no longer a
pretrial detainee.

On May 21, 2010, the plaintiff had a hearing in Rockville
Superior Court in connection with the criminal assault charge
filed against him in January 2010.  Correctional Officers Vierra
and Vereen were assigned to transport the plaintiff from Northern
to the courthouse and back to Northern after the court hearing.
The weather was hot that day.  The plaintiff had trouble
breathing while he was in the prison van and also sweated
excessively.

On July 30, 2010, in the Connecticut Superior Court for the
Judicial District of Tolland at Rockville, the plaintiff pleaded
guilty to the charge of assault on a correctional officer in
violation of Connecticut General Statutes § 53a-167c.  A judge
imposed a two year sentence of imprisonment to be served
consecutively to the plaintiff's prior sentence for a robbery
conviction.  *See State v. Pagan*, Docket No. TTD-CR10-0096100-T
(Conn. Super. Ct. July 30, 2010)

## III. **Discussion**

The defendants move for partial summary judgment on three

grounds.  They argue that (1) the allegations against Lieutenant Siwicki and Correctional Officers Kidd, Vierra and Vereen fail to state a claim upon which relief may be granted; (2) the requests for declaratory and injunctive relief are moot; and (3) Officers Kidd, Vierra and Vereen and Lieutenant Siwicki are entitled to qualified immunity.

### A.    Failure to State a Claim - Retaliation

The Complaint includes an allegation that Officer Kidd retaliated against the plaintiff by spitting into his juice on January 12, 2010.  (*See* Compl. at 19, 36.)  The plaintiff does not explain the basis for this claim of retaliation.  The Complaint does not include a claim of retaliation against Lieutenant Siwicki.

In response to the motion for summary judgment, the plaintiff concedes that there are no facts to support the existence of an underlying constitutionally protected activity that would give rise to a retaliation claim against either defendant Kidd or defendant Siwicki.  The Court agrees that the plaintiff has failed to state a claim of retaliation against either defendant Kidd or defendant Siwicki.  Thus, the motion for summary judgment is granted as to any claims of retaliation against defendants Kidd and Siwicki.

### B.    Failure to State a Claim -Conditions of Confinement

The plaintiff contends that Lieutenant Siwicki and

Correctional Officers Kidd, Vierra and Vereen subjected him to various unconstitutional conditions of confinement.  The defendants argue that the plaintiff's allegations do not state viable claims under the Eighth Amendment.

The parties do not dispute that the plaintiff was a pretrial detainee at the time of the incident involving defendants Siwicki and Kidd.  The claims of a pretrial detainee confined in a state correctional facility are reviewed under the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  Because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime," the Due Process clause of the Fourteenth Amendment dictates that he or she may not be punished in any manner-neither cruelly and unusually nor otherwise.  *Id.* at 536-37.

The Second Circuit has determined that "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  To state a claim under the Eighth Amendment, the plaintiff must demonstrate both that he is incarcerated under conditions that pose a substantial risk of serious harm to his health or safety and that the defendant prison officials acted with a

"'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The Supreme Court has held that a prisoner's conditions of confinement must meet "minimal civilized measure[s] of life's necessities." *Wilson*, 501 U.S. at 298 (internal quotation marks omitted).  Thus, to meet the objective prong of the Eighth Amendment standard, an inmate must demonstrate that the conditions, either alone or in combination, deprived him or her of basic human needs such as "food, clothing, shelter, medical care, and reasonably safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989).  The court evaluates the conditions in light of contemporary standards of decency to determine whether they are sufficiently serious to satisfy the objective element. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).

The subjective prong of the Eighth Amendment standard is met if the plaintiff can demonstrate that the prison officials were not "mere[ly] negligen[t]," but that they acted with "deliberate indifference" to inmate health and safety. *Farmer*, 511 U.S. at 835.  To constitute deliberate indifference, the prison official must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also

[have] draw[n] the inference." *Id.* at 837.  Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk. *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

### 1.   **Lieutenant Siwicki**

The defendants contend that the only claim against defendant Siwicki relates to his alleged refusal to investigate the plaintiff's allegation that Officer Kidd spit into his juice on January 12, 2010.  During the plaintiff's deposition by counsel for the defendants, the plaintiff testified that he had no other claims against Lieutenant Siwicki other than his claim that Lieutenant Siwicki had failed to investigate his complaint about Officer Kidd spitting into his juice.  (*See* Defs.' Local Rule 56(a)1 Statement, Attach. 1, Doc. No. 117-2, at 17.)  The plaintiff does not dispute this testimony or argue that he is pursuing any other claims against Lieutenant Siwicki.

The defendants argue that the plaintiff has failed to allege that Lieutenant Siwicki was sufficiently involved in the incident involving the contaminated drink offered to the plaintiff by Officer Kidd.  In response, the plaintiff indicates that he does not oppose summary judgment in favor of Lieutenant Siwicki because he agrees that he has not alleged sufficient facts to show defendant Siwicki's personal involvement in the January 12,

-10-

2010 incident.  Accordingly, the motion for summary judgment is granted as to the claim against defendant Siwicki relating to the alleged contamination of the plaintiff's drink by Officer Kidd. The Court considers any other claims asserted against defendant Siwicki to have been withdrawn.

### 2.   **Correctional Officer Kidd**

The plaintiff alleges that on January 12, 2010, he was confined in One East Cell 216 at Northern.  Officer Kidd and Officer Dugan came to his cell that day to deliver dinner. Officer Kidd was responsible for pouring the drinks to be served with the dinner meal.  He poured juice into a cup, handed the cup to Officer Duggan who placed the cup and the plaintiff's dinner meal in the food slot in the plaintiff's cell door.

The plaintiff claims that when he looked at the juice in the cup, he noticed a slimy substance floating on the surface.  He fished the substance out with his finger and thought that it looked like mucous.  He concluded that Officer Kidd had spit into the juice prior to handing it to Officer Duggan to be put on the plaintiff's food tray.  The plaintiff did not drink the juice or eat any part of his dinner meal that day.  Lieutenant Siwicki transferred the plaintiff to One West Cell 101 later that evening.  The defendants contend that the plaintiff's allegations against defendant Kidd do not state a claim of a violation of the plaintiff's Eighth Amendment rights.

There are no allegations or evidence indicating that Officer Kidd was involved in the altercation between the plaintiff and Officer Guimond on January 6, 2010. The plaintiff concedes that he did not observe Officer Kidd spit into his juice on January 12, 2010. (*See* Mem. Opp'n Mot. Summ. J., Doc. No. 125, at 8.) Furthermore, he has offered no evidence demonstrating that anyone else observed Officer Kidd spit into his drink. Officer Kidd has filed an affidavit stating that he did not tamper with or spit into the plaintiff's food or drink on January 12, 2010, or at any other time. Nor did he observe that anyone else had spit into the plaintiff's drink. (*See* Defs.' Local Rule 56(a)1 Statement, Attach. 2, Kidd. Aff. ¶¶ 3-4, Doc. No. 117-2, at 29.)

The Court concludes that the plaintiff has not met his burden of demonstrating that Officer Kidd in fact attempted to contaminate his juice by spitting into it before it was served to him at the dinner meal on January 6, 2010. Thus, the plaintiff has failed to state a claim that Officer Kidd violated his constitutionally or federally protected rights. *See Thaxton v. Simmons*, No. 9:10-CV-1318(MAD)/RFT), 2013 WL 4806457, at *5 (N.D.N.Y. Sept. 9, 2013)(granting summary judgment on Eighth Amendment claim because evidence presented would not permit a "rational juror [to] conclude that Defendant Simmons was personally involved in tampering with Plaintiff's food on April 6 merely because he served the food that day.")

Even if there was evidence that Officer Kidd had contaminated the plaintiff's juice by spitting into it, such evidence does not meet the objective prong of the Eighth Amendment conditions of confinement standard.  The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (internal quotation marks omitted).  Although "no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, . . . under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Id.* (citation omitted).

The plaintiff alleges that Officer Kidd contaminated his juice with saliva during the dinner meal on one day in January 2010.  As a result, the plaintiff did not drink the juice or eat his dinner meal that day.

The plaintiff does not allege that anyone deprived him of breakfast or lunch on January 12, 2010.  Nor does he allege that anyone deprived him of breakfast, lunch or dinner on any other day either before or after January 12, 2010 or that he suspected that Officer Kidd had contaminated a meal or drink on any other day.  Furthermore, the plaintiff does not allege that the

-13-

deprivation of the dinner meal on January 12, 2010 caused imminent danger to his health or safety.

The allegation that defendant Kidd denied the plaintiff food and drink at one meal does not constitute a substantial or sufficiently serious deprivation of a basic human need.  *See Hankerson v. Nassau County Correctional Facility*, No. 12-CV-5282(SJF)(WDW), 2012 WL 6055019, at *4 (E.D.N.Y. Dec. 4, 2012) (inmate's claim that "he missed a single meal falls far short of a 'substantial deprivation of food' and does not rise to the level of a constitutional deprivation"); *Waring v. Meachum*, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (no Eighth Amendment claim where inmates missed one or two meals and there was no indication that future meals were missed). Thus, the plaintiff has not met the objective prong of the Eighth Amendment standard. The motion for summary judgment is granted as to the claims against defendant Kidd.

### 3.   **Officers Vereen and Vierra - Extreme Temperature**

The plaintiff alleges that Officers Vereen and Vierra subjected him to unconstitutional conditions of confinement when they turned on the heat in the prison van during a trip to and from Connecticut Superior Court on May 21, 2010, in connection with a criminal case.  The defendants argue that the plaintiff has not met the objective prong of the Eighth Amendment standard because he has failed to demonstrate that he suffered a

sufficiently serious deprivation of a basic human need.

At that time of the plaintiff's trip to the Connecticut Superior Court on May 21, 2010, the plaintiff had already been convicted and sentenced on other criminal charges.  Thus, he was no longer a pretrial detainee.  Accordingly, the plaintiff's claim is analyzed under the Eighth Amendment standard set forth above.

Prisoners have no right to be housed in comfortable surroundings.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("[T]he Constitution does not mandate comfortable prisons"); *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.")  Thus, conditions that are "restrictive or even harsh" are "part of the penalty criminal offenders pay for their offenses against society."  *Rhodes*, 452 U.S. at 347.

To meet the objective prong of the Eighth Amendment standard, the plaintiff must show that conditions under which he was confined by the defendants resulted in "serious deprivations of basic human needs."  *Id.*  Courts, including the Second Circuit, have recognized that exposure to excessively hot or cold conditions in a prison setting for a prolonged period of time may violate the Eighth Amendment. *See Gaston v. Coughlin*, 249 F.3d

-15-

156, 165 (2d Cir. 2001) (exposure of inmate to freezing cold temperatures for a five-month period during the winter could constitute an Eighth Amendment violation); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d cir. 1988) (reversing grant of summary judgment because evidence demonstrated that prison officials had deliberately exposed inmate to bitter cold in cell block for three months); *Clark v. Bandy*, No. 2:10-CV-169-RWS, 2011 WL 11346975, at *3 (N.D. Ga. Apr. 9, 2011)(prisoner's complaints to prison officials of excessive heat and trouble breathing for three months could state an Eighth Amendment claim).

The parties do not dispute that the State of Connecticut charged the plaintiff with assault on a peace/correctional officer in connection with the altercation that occurred on January 6, 2010, between the plaintiff and his cellmate and Officers Jones and Guimond.  Further, on May 21, 2010, in connection with a court hearing scheduled in the criminal assault case against the plaintiff, Officers Vereen and Vierra transported the plaintiff in a prison van from Northern to the courthouse in Rockville and then back to Northern after the hearing.  The parties also agree that it was hot that day, but neither party has presented evidence as to the exact temperature.

The plaintiff alleges that on the way to the courthouse, Officers Vierra and Vereen had the windows open in the front of the van, but that the heat was turned on in the back of the van

blowing hot air from the vents in the ceiling. According to the plaintiff, he had asthma and had trouble breathing because of the heat, but was able to breath in cooler air from the front of the transport van through holes in the partition separating the front of the van from the back of the van.

The plaintiff further alleges that on the way back from the courthouse to Northern, the heat was turned on in the back of the van, Officers Vierra and Vereen drove around for about two hours before going back to Northern, and when the plaintiff arrived at Northern he was sweating and his clothes were soaked in sweat. Officers Vereen and Vierra dispute that the heat was turned on in the back of the van. They aver that the air-conditioning was turned in both the front and back of the van and that they drove directly back to Northern from the courthouse.

Even assuming the plaintiff's allegations are true and that either the heat was on or the air-conditioning did not work in the back of the van, the plaintiff has not provided evidence that he suffered serious harm or injury as a result of the temperature in the prison van. Although he alleges that the heat was on in the back of the van on the way to the courthouse, he does not claim that he had trouble breathing or that he started to sweat during the ride or that he was sweaty or could not breath when he arrived at the courthouse. Furthermore, he does not allege that he informed Officers Vereen or Vierra about the hot temperature

or the hot air blowing from the vents in the back of the van at any time during the trip to the courthouse or upon his arrival at the courthouse.

The plaintiff offers no evidence that prior to his return from the courthouse to Northern, he attempted to inform Officers Vierra or Vereen of the hot temperature in the back of the van. Nor did he try to get the attention of either Officer during the ride back to Northern.  The plaintiff concedes that he was able to breath cooler air through holes in the partition dividing the front of the van from the back of the van.

Even assuming that plaintiff in fact suffered from asthma on May 21, 2010, had difficulty breathing because of the heat on the trip to the courthouse and sweated profusely during the return trip to Northern, the plaintiff provides no evidence that his alleged breathing difficulties, asthma or sweaty condition required any medical or other type of treatment upon his arrival at Northern or at any other time.

Although the temperature in the prison van during the trip may have been uncomfortable, the Court concludes that the alleged conditions were not sufficiently severe or prolonged enough to deprive the plaintiff of the minimal civilized measures of life's necessities.  *See Trammell v. Keane*, 338 F.3d 155, 164-65 (2d Cir. 2003) (short-term exposure to cold temperatures did not constitute threat to health of safety under Eighth Amendment);

-18-

*Woods v. Edwards*, 51 F.3d 577, 581 (5ᵗʰ Cir. 1995) (although high temperature in extended lockdown unit was uncomfortable, it did not deprive inmate of basic human need because inmate failed to present medical evidence that heat aggravated his sinus condition); *Ramirez v. Strange*, No. 3:08cv906(AWT), 2010 WL 3828002, at *6 (D. Conn. Sept. 21, 2010) (granting summary judgment to prison officials on inmate's claim that lack of air conditioning in prison led him to nearly faint from the heat several times because that allegation did "not reflect an extreme deprivation of the need for habitable shelter, health or safety").  Thus, the plaintiff has not met the objective element of the Eighth Amendment standard.  The motion for summary judgment is granted as to the conditions claim against defendants Vierra and Vereen relating to the temperature in the prison van.

### 4.   **Officer Vierra - Verbal Harassment**

The plaintiff alleges that Officer Vierra made comments about beating him up just before the trip to court on May 21, 2010, and just after his arrival back at Northern later that day.[2]  In addition, during the escort of the plaintiff back to his cell after the court trip, Officer Vierra allegedly threatened to make the plaintiff's future trips to court

---

[2] Officer Vierra allegedly said "You know, I should whoop your ass." (*See* Pl.'s Local Rule 56(a)2 Statement, Ex. 2, Pl.'s Aff. ¶ 15, Doc. No. 125-5, at 7.)  Officer Vierra denies that he ever spoke in a threatening manner to the plaintiff.  (*See* Defs.' Local Rule 56(a)1 Statement, Attach. 4, Vierra Aff. ¶ 7, Doc. No. 117-2, at 34.)

uncomfortable and called the plaintiff several names, including "bitch and pussy."  The defendants argue that the these allegations fail to state a claim of a violation of the plaintiff's Eighth Amendment rights.

It is well-settled that verbal harassment or remarks do not constitute a cognizable violation of an individual's federally or constitutionally protected rights.  *See Morrison v.* Hartman, 898 F. Supp. 2d 577, 584 (W.D.N.Y. 2012) ("Allegations of verbal abuse, without more, generally fail to state an actionable claim under the Eighth Amendment."); *Aziz Zarif Shabazz v. Picco*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (internal quotation marks omitted).  Although Officer Vierra allegedly made reference to the incident in which Correctional Officers at Northern had beaten the plaintiff up, called the plaintiff names, used profanity, and threatened to beat the plaintiff up and make future court trips uncomfortable, the plaintiff does not allege that Officer Vierra actually attempted to physically harm him or that he ever transported the plaintiff to court again.  Accordingly, the plaintiff's claims of verbal harassment and threats do not state a claim of a violation of his

constitutional rights.  The motion for summary judgment is granted as to the claims of verbal abuse and threatening comments by defendant Vierra.

### 5.  Officer Vierra - Failure to Protect

The plaintiff alleges that during the escort back to his cell after the court trip, Officer Vierra called him several names, including a "snitch."  The plaintiff contends that this conduct subjected him to a risk of harm because other inmates might have heard Officer Vierra call him a snitch.  The defendants argue that this allegation fails to state a claim under the Eighth Amendment.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to make reasonable efforts to ensure inmate safety.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  That duty includes taking appropriate action "to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833 (internal quotation marks omitted).  To establish a failure to protect claim under the Eighth Amendment, a prisoner must show that the conditions of his incarceration "pos[ed] a substantial risk of serious harm" to him and that the prison official, who was aware of the risk of harm, was deliberately indifferent to his or her safety "by failing to take reasonable measures to abate it."  *See id.* at 834, 847.

Courts within the Second Circuit have held that, in a prison

setting, labeling an inmate as "a snitch" may pose a threat to
that inmate's safety or health.  *See Campbell v. Gardiner*, No.
12-CV-6003P, 2014 WL 906160, *4 (W.D.N.Y. Mar. 7, 2014) (a claim
for deliberate indifference may lie where a corrections officer
identifies an inmate as being an informant or a snitch in front
of other inmates).  To state a claim under the objective prong of
the Eighth Amendment, however, a plaintiff must allege "[a]t the
very least . . . that the defendant's actions gave rise to an
excessive risk to the inmate's safety." *Abney v. Jopp*, 655 F.
Supp. 2d 231, 233 (W.D.N.Y. 2009).  Generally, a prison
official's verbal statement labeling an inmate as a snitch or
informant will not meet the objective prong of the Eighth
Amendment, absent allegations that the inmate faced actual or
imminent physical injury or harm as a result of the comment.  *See
Id.* at 233-34; *Green v. City of New York Dept. Of Corr.*,  No. 06
Civ. 4978(LTS)(KNF), 2008 WL 2485402, at *7 (S.D.N.Y. June 19,
2008) ("cases cited by Plaintiff in which courts found viable
Eighth Amendment claims premised on being labeled a 'snitch,' . .
. [included] allegations or proffered evidence of actual physical
harm").

Here, the plaintiff simply alleges that Officer Vierra
referred to him as a "snitch" as he walked past other inmates'
cells while escorting him back to his own cell.  The plaintiff
contends that Officer Vierra's comment might have placed his life

-22-

in danger if other inmates had heard the comment.  The plaintiff does not allege or provide evidence to show that he suffered any harm or injury as a result of this comment.

The Court concludes that no reasonable jury would find, based on the admissible evidence, that Officer Vierra's alleged act of labeling the plaintiff as a snitch on one occasion, in and of itself, exposed the plaintiff to a substantial risk of serious harm.  Thus, the plaintiff has not met the objective prong of the Eighth Amendment standard.  The motion for summary judgment is granted as to the claim that Officer Vierra violated the plaintiff's Eighth Amendment rights by labeling him as a snitch.

### C.   Injunctive and Declaratory Relief

The defendants argue that the plaintiff's request for injunctive relief is moot because he has been transferred from Northern.  The Second Circuit has held that an inmate's requests for injunctive and declaratory relief against correctional staff or conditions of confinement at a particular correctional institution become moot when the inmate is discharged or transferred to a different correctional institution.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  Other courts concur with this result.  *See, e.g., McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement).

The plaintiff's allegations in the Complaint relate to conditions that occurred at Northern during 2010. The plaintiff seeks injunctive relief against defendants who were employed at Northern at the time of the filing of the Complaint. The plaintiff is currently incarcerated at MacDougall-Walker. The plaintiff does not object to the dismissal of his requests for injunctive relief. Because the relief sought by the plaintiff is no longer needed, since he is currently incarcerated at a different correctional institution, the claims for injunctive relief are moot. The motion for summary judgment is granted as to the claims for injunctive relief.

The defendants also seek summary judgment as to the plaintiff's request for declaratory relief. The plaintiff seeks a declaration that the defendants violated his constitutionally and federally protected rights. Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great harm. *See In re Combustion Equipment Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988). Because declaratory relief operates in a prospective manner, it is not appropriately applied to prior violations because damages have already accrued. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. International Wire Group, Inc.*, No. 02 Civ. 10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003).

The alleged violations of the plaintiff's rights which

occurred over three years ago at Northern will be compensated by monetary damages should the plaintiff prevail in this action. Accordingly, declaratory relief is not appropriate.  The motion for summary judgment is granted as to the plaintiff's request for declaratory relief.

## IV.  <u>Conclusion</u>

The Motion for Partial Summary Judgment [**Doc. No. 117**] is **GRANTED** in all respects as to the retaliation claims against defendants Kidd and Siwicki, the Eighth Amendment claim against defendant Siwicki relating to the alleged contamination of the plaintiff's drink by Officer Kidd, the Eighth Amendment claims against defendant Kidd, the Eighth Amendment claim against defendant Vierra and Vereen relating to the temperature in the prison van, the Eighth Amendment claims of verbal harassment and failure to protect against defendant Vierra, and the requests for injunctive and declaratory relief against all defendants.  The Court considers any other claims asserted against defendant Siwicki to have been **WITHDRAWN.**

Thus, all claims against defendants Siwicki, Kidd, Vierra and Vereen have been dismissed.  The case proceeds as to the Eighth Amendment claims of excessive use of force and failure to protect, and state law claims of assault and battery, against defendants Lieutenants Nelson Correa and Michael Pafumi, Counselor John Frasco and Correctional Officers Aaron Bowman,

Shaun Duggan, Matthew Prior, Anthony Trombly and Sean Guimond in their individual capacities.


        SO ORDERED this 18th day of March 2014, at Hartford, Connecticut.



        _____/s/ DJS_____
                DOMINIC J. SQUATRITO
        UNITED STATES DISTRICT JUDGE